# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-10-371-D |
| DWAYNE D. MOTSENBOCKER, | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the motion in limine [Doc. No. 71] of Defendant Dwayne D. Motsenbocker. Defendant seeks to exclude at trial the testimony of Federal Bureau of Investigation ("FBI") Supervisory Special Agent Dan Williams, who is listed by the government as both a fact witness and an expert witness. The government timely responded to the motion.

The parties agree that the government's summary of Mr. Williams's testimony is as follows:

> In addition to being a fact witness, Mr. Williams will testify based on his training and experience that bank robbers often use stolen vehicles[1] to commit bank robberies, that bank robbers often case banks and look for fast getaway routes before the robbery, and that bank robbers sometimes take back roads when leaving the banks to avoid law enforcement officers who may be responding to the scene using main roads.

In its support of Mr. Williams's expert testimony, the government provides the following summary of his qualifications:

> He has 24 years experience as an FBI agent. For seven of those years he has supervised the Gang and Violent Crime Squad in Oklahoma City which investigates bank robberies. As such, he as [sic] supervised 100s of bank robbery investigations. He is also the Bank Robbery Coordinator for the entire state of Oklahoma even

---

[1] In its response to the motion, the government states that, because the issue of the allegedly stolen vehicle has been rendered moot by Leonard Etheridge's guilty plea, Williams will not testify about the use of stolen vehicles.

though the FBI has offices in the [sic] Tulsa (the Northern District of Oklahoma) and Muskogee (the Eastern District of Oklahoma). As the Bank Robbery Coordinator for the state, he receives and review [sic] numerous bulletins prepared by FBI agents all over the country in order to compare MOs so that serial bank robbers can be detected and cases from multiple jurisdictions can be linked. Before he was a supervisor, he worked as the lead investigator or assisted on over 50 bank robbery investigations and debriefed bank robbers after their arrests. Additionally, Mr. Williams has trained numerous banks and local law enforcement officers how to respond to a bank robbery.

Defendant argues Mr. Williams's testimony is inadmissible as expert testimony because it does not satisfy the requirements of Fed. R. Evid. 702 and the *Daubert*[2] rules governing the application of Rule 702. Defendant also argues Williams lacks the personal knowledge required by Fed. R. Evid. 602 to support the factual testimony underlying his opinions.

Where the admissibility of expert testimony is challenged, the Court has discretion to determine whether a hearing is necessary. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999). Having reviewed the parties' briefs, the Court has determined that a hearing is not required to determine the admissibility of Mr. Williams's expert testimony.

Rule 702 governs the use of expert testimony. According to the Rule:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. It is the responsibility of the Court to act as a "gatekeeper" with regard to admission of proffered expert testimony by determining whether the expert evidence is sufficiently

---

[2]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

2

reliable and relevant and will assist the trier of fact in understanding the issues. *Daubert*, 509 U.S. at 597. Although *Daubert* prescribes certain factors[3] to apply in determining the reliability of scientific or technical expert testimony the Court has the discretion to determine the applicability of those factors where, as in this case, the testimony is not purely scientific; in such cases, the *Daubert* factors should be considered only to the extent they are relevant to the subject of the testimony. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). If the Court determines the witness is qualified and his opinion is reliable, it must also determine that the opinion to be offered is relevant and will assist the jury in its determination of the facts. *See, e.g., Wilson v. Muckala*, 303 F. 3d 1207, 1219 (10th Cir. 2002).

A law enforcement officer's testimony satisfies the *Daubert* reliability requirement if the officer is qualified by training and experience to offer an opinion. *United States v. Garza*, 566 F. 3d 1194, 1199 (10th Cir. 2009). *See also United States v. Pulido*, 2011 WL 386977, at *11 n. 21 (N. D. Okla. Feb. 3, 2011) (unpublished opinion). The specialized knowledge required for reliability can be "acquired through 'experience' and 'training.'" *Garza*, 566 F. 3d at 1199 (quoting Fed. R. Evid. 702). According to the Tenth Circuit, "police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters," on a variety of topics. *Id.* The Tenth Circuit has "consistently found that the reliability of officer testimony can be 'safely inferred from the breadth of [the] individual's traning and experience.'" *Pulido*, 2011 WL 386977, at * 12 (quoting *United States v. Diaz*, 356 F. App'x 117, 126-27 (10th Cir. 2007)(unpublished opinion) and

---

[3] According to *Daubert*, when evaluating the admissibility of technical or scientific expert testimony, the trial court should consider: 1) whether the theory or technique used by the expert can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the technique or method; and 4) whether the theory or technique has obtained general acceptance within the scientific community. 509 U.S. at 593-94.

*Garza*, 566 F. 3d at 1199).

In *Garza*, the officer was allowed to offer expert testimony that, based on his experience, the type of firearm and ammunition found at the crime scene were typical of that used by drug traffickers. *Id.* at 1197-98. The Circuit has also allowed a law enforcement officer to offer an expert opinion that, based on his experience, firearms are often used to protect a methamphetamine laboratory. *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992). Similarly, an officer's experience was found sufficiently reliable to allow him to opine that "street dealers" frequently carry firearms to protect the "merchandise" and money associated with drug trafficking. *United States v. McDonald*, 933 F. 2d 1519, 1521 (10th Cir. 1991).

Although the Tenth Circuit has not expressly addressed the propriety of allowing expert testimony on the subject of the modus operandi of a bank robber, it has held that expert testimony regarding "criminal methods that are beyond the common knowledge of lay jurors" is properly admitted. *United States v. Batton*, 602 F. 3d 1191, 1201 (10th Cir. 2010) (allowing a medical professional to testify regarding the characteristics of sex offenders and their victims in order to dispel any juror misconceptions about such characteristics).

In this case, Mr. Williams has extensive experience as an FBI agent involved in investigating bank robberies. In addition to supervising such investigations, he previously served as the lead investigator in over 50 bank robbery investigations. Furthermore, he has experience in studying and comparing certain behaviors, or the modus operandi, of known bank robbers. His experience and training are sufficient to qualify him to render a reliable expert opinion regarding the behaviors of bank robbers.

Defendant correctly argues that, notwithstanding his qualifications, Mr. Williams should not

be permitted to offer expert testimony unless that testimony will assist the jury in understanding the evidence or in determining a fact in issue, as required by Fed. R. Evid. 702. He contends that the testimony to be offered by Mr. Williams will not assist the jury in this case because the subject of his testimony is within the common knowledge of the jurors. Thus, he argues, expert testimony is not required to explain to the jury that bank robbers often "case" the target bank in advance or that they commonly use "getaway" vehicles on routes less likely to attract law enforcement attention; such matters, he contends, are within the understanding of the average layman.

As the government points out, persons qualified to serve on the jury are not necessarily familiar with criminal behavior. While they may possess knowledge based on their observation of media reports, that observation can also create misconceptions about certain criminal behavior. The Tenth Circuit has held that expert testimony may be admitted to ensure that juror misconceptions about criminal behavior are minimized. *See Batton*, 602 F. 3d at 1201; *McDonald*, 933 F. 2d at 1522. In this case, the Court cannot conclude that the jurors have sufficient accurate information to enable them to accurately weigh the evidence regarding the importance, or lack thereof, of certain conduct in this case, nor can the Court assure that they have no misconceptions about that conduct. Expert testimony may assist them in properly evaluating the evidence. The Court concludes that the proffered testimony will be of assistance to the jury. The testimony is also relevant to the issues in this case, as evidence of Defendant's actions and inactions will be presented at trial, and the jury will be required to evaluate that evidence in reaching its conclusions.

Mr. Williams may not, of course, offer an opinion which states a legal conclusion, as expert witnesses cannot offer legal opinions. "In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir.1988). Nor can Mr. Williams offer an

5

opinion which invades the province of the jury in its determination of an ultimate fact or element of the crimes charged. *See Garza*, 566 F. 3d at 1200-1201 (expert could not properly testify that the defendant possessed a firearm "in furtherance of" drug trafficking because possession in furtherance of drug trafficking is an element of the crime charged and an issue to be decided by the jury). Government counsel is reminded that such opinions and conclusions cannot be properly elicited from Mr. Williams, and his testimony must be narrowly tailored to avoid that result.

Defendant also argues that Mr. Williams cannot properly testify as a fact witness in this case because he had no involvement in the investigation of the charged crimes. Although the description of his testimony suggests he will testify as both a fact witness and an expert, the government's response to the motion indicates he will testify only as an expert witness. Accordingly, the Court has confined its ruling to that subject. As the government points out, he need not have been involved in the investigation of this case in order to offer expert testimony based on his experience in investigating bank robberies and analyzing the behavior of known bank robbers. *See, e.g., Garza*, 566 F. 3d at 1198-2000. If there remains an issue regarding factual testimony, the parties are directed to so advise the Court prior to the presentation of such testimony so that an appropriate ruling may issue.

Based on the foregoing, and subject to the limitations on the proper scope of Mr. Williams's testimony, Defendant's motion [Doc. No. 71] is DENIED.

IT IS SO ORDERED this 15th day of March, 2011.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE